**STATE of Missouri, Respondent,**

v.

**Joe A. KERN, Appellant.**

**No. WD 33254.**

Missouri Court of Appeals,
Western District.

May 10, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied June 28, 1983.

James W. Fletcher, Anne Hall, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Margaret Jones, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

Joe A. Kern was found guilty by a jury of murder in the second degree under § 565.004 RSMo 1978,[1] and of assault in the first degree under § 565.050. Pursuant to the jury's verdict the court sentenced Kern to 30 years imprisonment on the murder count, and 10 years on the assault count, and ordered that these sentences run consecutively.

Kern has appealed, contending that the court failed to define the term "deadly force" in an instruction, that the evidence showed that he had killed in self-defense as a matter of law, and that he had been denied the right to show specific prior violent acts by the victim. Affirmed.

Although Kern admits that he killed Kathleen ("Kitty"), McClelland, there was conflicting evidence regarding the circumstances. The evidence shows that at about 9:30 p.m. on February 5, 1981, McClelland and a female friend entered the Chestnut Inn, a bar in Kansas City. The two had previously been drinking at another bar and had also smoked some marijuana. Kern entered the Chestnut Inn about an hour later with a male friend and sat at a table about six feet from McClelland. The state's witnesses testified they had observed no conversation or contact between Kern and McClelland prior to the shooting. These witnesses testified that Kern had turned his chair so that his back was to his own table and he was facing McClelland. Seated in this position, he stared at McClelland for about 15 to 20 minutes before shooting her. The state's witness said that Kern stood up, drew a handgun, and fired at McClelland. Kern fired two or three more times after McClelland had fallen to the floor. These witnesses testified that Kern then left the bar with the gun in his hand. One witness testified that Kern was smiling as he left the scene.

When the police officers arrived a few minutes after the shooting, they found that McClelland was already dead. A search of her purse failed to reveal the presence of any gun. The only weapon found on McClelland was a small pocket knife in her pants pocket.

The medical examiner testified that she had performed an autopsy on McClelland, which revealed that there were four entrance gunshot wounds and three exit wounds. One bullet was recovered from the body. She stated that the cause of death was gunshot wounds to the chest and abdomen, which had ruptured the aorta.

One of the shots fired by Kern struck another bar patron, Dean Tracy, in the leg. This gave rise to the assault charge.

Kern testified in his own behalf. He stated that he and McClelland had previously lived together for a short time, and that since then they had not gotten along. He said that when he entered the bar, McClelland came over to his table and started an argument with him. She left and returned in about 20 minutes. This time she pulled a gun from her purse and told Kern that he would not leave the bar alive. Kern then went to the men's room where a friend gave him a pistol, which he said that Kern would need to protect himself.

Kern returned to his table and sat looking at McClelland while he tried to decide how he would get out of the bar. He said that he had gotten up and started to leave, at which time McClelland started screaming at him and reached into her purse. Kern said that at this point he had feared for his life, and therefore pulled the gun from his pocket and shot McClelland. He stated that he fired three times.

Kern introduced evidence of McClelland's violent and turbulent disposition and character. However, the trial court refused to allow Kern to introduce evidence of prior specific violent acts committed by McClelland, such as the fact that she had shot and killed another man.

Kern contends that the evidence showed as a matter of law that he had

---

1. All sectional references are to Missouri's Revised Statutes, 1978.

killed McClelland in self-defense, and that he was therefore entitled to be acquitted. The facts set forth above demonstrate that there was conflicting evidence as to whether there was any conversation between McClelland and Kern prior to the shooting. The state's evidence indicated there had been no conflict or contact between the two, while Kern's evidence was that McClelland had threatened to kill him. To show self-defense as a matter of law, the undisputed and uncontradicted evidence must clearly establish self-defense. *State v. Davis,* 572 S.W.2d 243, 246 (Mo.App.1978). In view of the disputed evidence, this case does not satisfy the above criteria, and the defense of self-defense was properly left to the jury's determination.

■ Kern next contends that the self-defense instruction failed to define the term "deadly force." The instruction was patterned after MAI–CR2d 2.41.1. In the instruction's introductory paragraph, the jury was told that the use of physical force, including the use of a deadly force, is justifiable if used in lawful self-defense. In paragraph 2 the instruction stated that if Kern had reasonably believed that it was necessary to use deadly force to protect himself against what he reasonably believed to be danger of physical injury at the hands of McClelland, then he had acted in lawful self-defense and must be acquitted. These were the only two points in the instruction that the term "deadly force" was used. The Notes on Use to MAI–CR2d 2.41.1 direct that a separate instruction defining "deadly force" is to be given when the term is used in an instruction, whether the definition is requested or not. The failure to follow the Notes on Use constitutes error, but its prejudicial effect is to be judicially determined. Rule 28.02(e). *See also State v. Rodgers,* 641 S.W.2d 83, 85[8] (Mo. banc 1982).

The definition of "deadly force" is given in MAI–CR2d 33.01 as "physical force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious physical injury." The definition of "deadly force" given in MAI–CR2d 33.01 is in accord with the definition that a jury of average intelligence would assign to that term. In determining the prejudicial effect of the failure to define this term, this court may assume that the jury was composed of persons with average intelligence. *State v. Hammond,* 571 S.W.2d 114, 117[4] (Mo. banc 1978). The juror of average intelligence would have no difficulty in applying the term "deadly force" to the facts in this case and would certainly take the instruction to mean that if it found that Kern acted in self-defense then he was justified in using "deadly force." In this case it is obvious that Kern used "deadly force," in that he killed McClelland. Thus, the term was not used in a technical sense, but rather was used in accordance with its plain and ordinary meaning. This court therefore finds that no prejudice resulted from the failure to define this term.

■ Kern finally contends that the court improperly excluded his proferred evidence that McClelland had previously shot and killed a man. Kern contends that such acts of specific violence of which he was aware should have been admitted as bearing on his state of mind at the time that he fired the shots which killed McClelland. As noted above, the court did admit Kern's evidence showing that McClelland had a general reputation of having a violent and turbulent disposition or character.

Kern concedes that the rule in Missouri is that specific acts of violence are inadmissible, but he contends that the rule is unfair and should be abandoned. The Supreme Court recently declined an invitation to change the rule in *State v. Buckles,* 636 S.W.2d 914, 923[15] (Mo. banc 1982). There the court stated that "[t]he present rule, based on relevancy, is well founded and generally accepted, and should not be abandoned."

The judgment is affirmed.

All concur.